IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ROSEMARY MONZON, as next friend of
Z.M. and as Administrator of the Estate of
Phillip Morris, Griggs, Jr., PHILLIP M.
GRIGGS, SR., and BRENDA GRIGGS,

        Plaintiffs,

v.

PARMER COUNTY, TEXAS

        Defendant.

NO. 2:06-CV-39-J

## MEMORANDUM OPINION

Phillip Griggs, Jr. hanged himself in Parmer County's jail. Plaintiffs—Griggs's mother, father, daughter, and estate—have sued for damages and injunctive relief. They allege that Parmer County violated the Untied States Constitution in several ways: it did not promptly find probable cause for Griggs's arrest; it jailed him because, as an indigent, he could not pay a fine and court costs; it did not monitor his condition when it knew or should have known about his mental distress; it did not get him medical treatment; it did not enforce or use its policies or its training for identifying and safeguarding suicidal inmates; and it has grossly inadequate policies for identifying and safeguarding suicidal inmates. They also allege that Parmer County's "conduct" violated the Texas Constitution. The Court grants the county's motion for summary judgment.

### I. BACKGROUND

Griggs was arrested for driving while intoxicated. Lorri Williams booked him into Parmer County's jail. The county's "Mental Disabilities/Suicide Prevention Plan" required that

she administer a questionnaire entitled "Mental Disability/Suicide Intake Screening"; the Texas Commission on Jail Standards has approved this plan and questionnaire. Williams asked Griggs, "Sometimes people tell me they hear noises or voices that other people don't seem to hear. What about you?" He answered "Yes." She asked, "When not on drugs or drinking, have you ever gone for days without sleep or had a long period in your life when you felt very energetic or excited?" He answered "Yes." She asked, "Have you experienced a recent loss or death of family member or friend or are you worried about major problems other than your current legal situation?" He answered "Yes." She asked, "Have you ever attempted suicide or had thoughts about killing yourself?" He answered "No." And she asked, "Are you thinking about killing yourself today?" He answered "No."

Parmer County's Sheriff, Randy Geries, believes that Williams should have brought these answers to a supervisor's attention and that the county should have paid attention to Griggs because of them. The "Mental Disability/Suicide Intake Screening" provides that a single inappropriate answer "indicates additional evaluation recommended." The "Mental Disabilities/Suicide Prevention Plan" provides that jailers will report an "inmate needing mental health care to the Sheriff or Chief Deputy" for referral to a mental-health authority. It also provides that the county will check on mentally disabled or potentially suicidal inmates every fifteen minutes, not every hour as with other inmates.

Williams did not bring Griggs's answers to a supervisor's attention, refer him for additional evaluation, or have him checked on every fifteen minutes. Based on his answers and on her personal observations, she believed that he did not suffer from a mental disability, pose a risk of suicide, need additional evaluation, or need to be checked on more than once every hour. She stated in a sworn declaration that if "I had any indication that he was suicidal, I would have

made sure that he was evaluated by a mental health professional and that he was monitored more closely on a 15 minute watch schedule." Parmer County has trained Williams in the procedures for recognizing, supervising, documenting, and handling inmates who are mentally disabled and potentially suicidal. It has trained her in the "Mental Disabilities/Suicide Prevention Plan." The Texas Commission on Law Enforcement Standards and Education has trained her to recognize and respond to mental-health issues and suicide risks. And the Texas Association of Counties has trained her in suicide detection and prevention.

On the day after booking, Griggs went before a Justice of the Peace for a probable-cause hearing. The Justice of the Peace found probable cause. A day later, Griggs went before County Judge Bonnie Heald for arraignment. She determined that Griggs was not indigent. She did so based on the facts that he had a job and that his file did not include an affidavit of indigency, which a file regularly includes if a Justice of the Peace has found a defendant to be indigent. Griggs pleaded guilty to driving while intoxicated. Judge Heald sentenced him to serve three days in jail and to pay $755.45 for a fine and court costs. Griggs voluntarily asked that she let him discharge the fine and costs by serving additional time in jail. She let him do so. He then signed a waiver of attorney that provided, "Now comes the Defendant . . . and certifies that he/she is financially able to employ counsel and is not indigent."

A day before the date scheduled for Griggs's release, Parmer County's Chief Deputy, Wayne Gruben, served him with a motion to revoke the community supervision that he had received for a prior felony. This motion angered Griggs. But Gruben did not notice signs of depression, and Williams did not notice major behavioral or emotional changes. Griggs even appeared to be in a good mood during an exchange that he had with Gruben ten days after the motion's service.

Two days after this exchange, Gruben found Griggs hanging from his cell bars. Griggs was cold and stiff; his tongue stuck out partially; his teeth were closed down on his tongue; and his jaws were locked. Gruben could not detect a heartbeat, a pulse, or breathing. He felt positive that Griggs was dead, that he had been for some time, and that there was no chance to resuscitate. He stated in a sworn declaration that if "I had thought there was even the slightest possibility that [Griggs] was alive, I would have done whatever I could have to have attempted to resuscitate him and get medical attention to him."[1]

Without trying to resuscitate Griggs—and without cutting him down—Gruben left the cell and called Sheriff Geries. Geries asked whether Gruben knew for certain that Griggs was dead. Gruben, who worked with corpses for years in funeral homes and as an ambulance attendant, said that he did. Geries told Gruben to lock the cell for investigative purposes and to call the Texas Rangers to investigate. The record contains conflicting evidence about whether he also told Gruben to continue to leave Griggs hanging. On the one hand, Geries and Gruben stated in sworn declarations that they did not discuss whether to leave Griggs hanging. On the other hand, notes of a conversation between Gruben and Defendant's expert provide that "Sheriff told not to cut him down . . . 'Don't disturb the crime scene.'" Whichever the case, Gruben continued to leave Griggs hanging. He and Geries classified the situation as a completed suicide and as a crime scene, not as a suicide in progress. It is the first suicide in Parmer County's jail for twenty-five years.

Because Gruben classified the situation as a completed suicide and not as a suicide in progress, he operated under section 1(g) and not section 1(f) of the "Mental Disabilities/Suicide Prevention Plan." Section 1(g) provides that jailers will report a completed suicide to the Sheriff

---

[1] Gruben found Griggs hanging at approximately 2:27 p.m. Justice of the Peace Pamela Haseloff came and pronounced him dead at 2:45 p.m., and she signed his death certificate to that effect. There is no evidence that he was alive at 2:27 p.m. when Gruben found him.

or Chief Deputy and that the Sheriff will call the Texas Rangers to investigate. Section 1(f) provides that jailers will notify an ambulance service as well as the Sheriff or Chief Deputy immediately upon discovering a suicide in progress. Jailers will immediately cut the person down and perform CPR until EMS relieves them. "No jailer or any Parmer County employee will presume death has occurred."

Parmer County has trained Gruben in the "Mental Disabilities/Suicide Prevention Plan." It has trained him in the procedures for recognizing, supervising, documenting, and handling inmates who are mentally disabled and potentially suicidal. The Texas Commission on Law Enforcement Standards and Education has trained him to recognize and respond to an inmate's medical and safety needs. And the Texas Association of Counties has trained him in suicide detection and prevention.

Parmer County trains all jailers in recognizing, supervising, documenting, and handling inmates who are mentally disabled and potentially suicidal. It also requires them to complete the Texas Commission on Law Enforcement Standards and Education's licensing program within a year of beginning their job. This program trains them to recognize and respond to an inmate's medical and safety needs, such as the risk of suicide.

## II. DISCUSSION

Parmer County has moved for summary judgment on several grounds. First, it argues that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars any claim that a magistrate did not promptly find probable cause for Griggs's arrest. Second, it alternatively argues that a magistrate did promptly find probable cause for his arrest. Third, it argues that no evidence supports the claim that it jailed him because, as an indigent, he could not pay the fine and costs. Fourth, it alternatively argues that it is not liable for this claim. Fifth, it argues that there is no evidence

that its employees acted with subjective knowledge of a substantial risk to Griggs's health. Sixth, it argues that no evidence supports the claim that it ignores policies or training. Seventh, it argues that no evidence supports the claim that it has inadequate policies or training regimens. Eighth, it argues that Plaintiffs do not have standing for injunctive relief. Ninth, it argues that it has immunity from the claims brought under state law.

Plaintiffs responded by disputing only the third and fifth arguments.

This Court may grant summary judgment if the record shows that there is no genuine issue of material fact and that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment has the burden to identify the parts of the pleadings and discovery on file that, together with any affidavits, show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant carries this burden, then the burden shifts to the nonmovant to show that the Court should not grant summary judgment. *Id.* at 324-25. Rather than rest on pleaded allegations or denials, the nonmovant must set forth specific facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court reviews the facts and draws all inferences most favorable to the nonmovant. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### A. P<small>ROBABLE</small> C<small>AUSE</small>

The claim that Parmer County did not promptly find probable cause for Griggs's arrest does not have merit. Parmer County produced the Justice of the Peace's order that it had probable cause to detain Griggs further. The Justice of the Peace entered this order on the day

after his arrest. Plaintiffs have neither controverted this order nor produced evidence that supports their claim.[2]

## B. IMPRISONMENT FOR INDIGENCY

Also without merit is the claim that Parmer County jailed Griggs because, as an indigent, he could not pay the fine and costs. A court may not impose "a fine as a sentence and then automatically [convert] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short*, 401 U.S. 395, 398 (1971) (internal quotations omitted). But Judge Heald did not convert Griggs's fine and costs into a jail term "solely" because he was indigent and could not pay. She converted them into a jail term only because Griggs voluntarily asked that she do so.

Even if she did jail Griggs "solely" because he was indigent and could not pay, Plaintiffs would have to establish Parmer County's liability. Holding a county liable under section 1983 requires proof of three things: (1) a constitutional violation; (2) a policymaker; and (3) an official policy that caused the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Official policy can take two forms:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*. 958 F.2d 92, 94 (5th Cir. 1992). The actions that county judges take in an administrative capacity do constitute official policy, while those taken in their judicial capacity

---
[2] The Court does not address whether the doctrine in *Heck v. Humphrey* and *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) bars this claim.

do not. *Id*. Judge Heald acted in her judicial capacity when she sentenced Griggs and converted his fine and costs into jail time. *See Familiar Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (citing various nonjudicial duties that a county's judges have); *see also Garcia Guevara v. City of Haltom City*, No. 03-10646, 2004 WL 1777165, at *1 (5th Cir. Aug. 10, 2004). Thus, Plaintiffs have not established Parmer County's liability because they cannot prove that an official policy caused Judge Heald to jail Griggs solely because he was indigent and could not pay his fine and costs.

### C. MONITORING GRIGGS OR GETTING HIM MEDICAL TREATMENT

The claims that Parmer County neither monitored Griggs's condition nor got him medical treatment boil down to two specific claims. The first is that Williams should have referred Griggs for more evaluation and had him checked on every fifteen minutes because his answers to the questionnaire should have alerted her that he posed a risk of suicide. The second is that upon finding him hanging, Gruben should have cut him down, administered CPR, and not presumed him to be dead.

These claims involve episodic acts or omissions that allegedly breached Parmer County's duty under the Eighth and Fourteenth Amendments to give convicted inmates and pretrial detainees basic human needs like protection from harm and medical care. *See Hare v. City of Corinth*, 74 F.3d 633, 644-45, 650 (5th Cir. 1996). Plaintiffs have tried to support the claims with *Heflin v. Stewart County*. 958 F.2d 709 (6th Cir. 1992). Despite any factual similarities between *Heflin* and this case, however, it does not remain good law. The Sixth Circuit applied an objective standard for deliberate indifference. *See Heflin*, 958 F.2d at 716 (holding that there was evidence of deliberate indifference because, upon finding a detainee hanging, a sheriff and a deputy "took no reasonable steps to attempt to save his life"). The Supreme Court has since held

that the standard is subjective. *Hare*, 74 F.3d at 648-49 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Under this standard, Plaintiffs must prove that the episodic acts or omissions of Williams or Gruben were done with "deliberate indifference" to a substantial risk of serious harm to Griggs. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001); *Hare*, 74 F.3d at 650. Deliberate indifference is more than negligence. *Gibbs*, 254 F.3d at 549. It "cannot be inferred from a negligent or even grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). It requires proof that (1) an official knew facts from which one could infer a substantial risk of serious harm; (2) he actually drew that inference; and (3) his response demonstrates that he subjectively intended the harm to occur. *Id*. at 458-59 (applying this test in the context of an episodic failure to give a pretrial detainee reasonable medical care); *see Gibbs*, 254 F.3d at 548-49 (stating that, for claims involving episodic acts or omissions, the same standard of deliberate indifference applies to pretrial detainees and state inmates).

*1.   Williams's Acts or Omissions*

Plaintiffs have not produced evidence that Williams's failures to refer Griggs for more evaluation or have him checked on every fifteen minutes were done with deliberate indifference. Williams at worst acted negligently. The summary-judgment record does not contain evidence that she actually inferred, from Griggs's behavior or his answers to the questionnaire, a substantial risk of serious harm. It does not contain evidence that she subjectively intended Griggs to suffer serious harm. She did not believe that he suffered from a mental disability, pose a risk of suicide, need additional evaluation, or need to be checked on every fifteen minutes. The

uncontroverted evidence shows that if she had, she would have referred him for more evaluation and had him watched closely.

Even if the acts or omissions were done with deliberate indifference, the Court would hold that Plaintiffs have not established Parmer County's liability. They have not produced evidence that the acts or omissions, done with deliberate indifference to a substantial risk of serious harm, were caused by official policy. Nor have they produced evidence that they were caused by a custom.

*2.    Gruben's Acts or Omissions*

Plaintiffs also have not produced evidence that Gruben's failures to cut Griggs down or administer CPR were done with deliberate indifference. Like Williams, he at worst acted negligently. The summary-judgment record does not contain evidence that he actually inferred a substantial risk of serious harm or subjectively intended that Griggs suffer it. Having looked at Griggs and not detected signs of life, Gruben felt positive that he was dead. The uncontroverted evidence shows that he would have administered CPR and gotten him medical care if he had believed that Griggs might have been alive.

### D. FAILING TO ENFORCE OR USE GUIDELINES, TRAINING, OR PROCEDURES

Plaintiffs claim that Parmer County failed to enforce or use guidelines, training, or procedures for identifying and safeguarding suicidal inmates. This only recasts the claim that Parmer County failed to protect Griggs from harm and get him medical treatment. As already discussed, this claim lacks merit.

### E. INADEQUATE POLICIES

Plaintiffs claim that Parmer County has inadequate policies for identifying and safeguarding suicidal inmates. They claim, too, that it inadequately trains jailers to identify or

safeguard these inmates.  A plaintiff can meet the requirements for establishing a county's liability by proving that policies, adopted or maintained with deliberate indifference to a constitutional right, directly caused constitutional violations.  *Piotrowski*, 237 F.3d at 579-80; *see Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).  Unlike the standard for an official's deliberate indifference to medical needs, the standard for a county's deliberate indifference to a constitutional right is objective.  *Victoria W. v. Larpenter*, 369 F.3d 475, 489 (5th Cir. 2004); *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002).  Proving "simple or even heightened negligence will not suffice." *Piotrowski*, 237 F.3d at 579 (internal quotations omitted).  Plaintiffs generally must prove a pattern of similar constitutional violations that have arisen from a policy with such clear inadequacies that it was "obviously likely" going to result in constitutional violations.  *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

*1.     Allegedly Inadequate Policies*

The "Mental Disabilities/Suicide Prevention Plan" sets forth Parmer County's written policy on identifying and safeguarding suicidal inmates.  The Texas Commission on Jail standards has approved it.  There is no evidence that it has caused a pattern of constitutional violations like those that Plaintiffs have alleged; no suicide had occurred in Parmer County for twenty-five years.  According to Parmer County, these facts demonstrate that it has not acted with deliberate indifference to known or obvious constitutional violations.  Plaintiffs did not disagree in response, produce evidence of deliberate indifference, or produce evidence that the plan directly caused a constitutional violation.

*2.     Allegedly Inadequate Training*

Parmer County trains all jailers in the procedures for recognizing, supervising, documenting, and handling inmates who are mentally disabled and potentially suicidal. It requires them to complete the Texas Commission on Law Enforcement Standards and Education's licensing program. Williams and Gruben, specifically, also received training in the "Mental Disabilities/Suicide Prevention Plan" from Parmer County as well as in suicide detection and prevention from the Texas Association of Counties. Plaintiffs have not pointed out any inadequacies in these training regimens. Nor have they produced evidence that the regimens have either caused a pattern of similar constitutional violations or caused a violation of Griggs's constitutional rights.

F.  REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs have requested that the Court enjoin several of Parmer County's alleged practices: (1) the practice of putting suicidal and emotionally disturbed inmates in cells with anchoring devices that allow them to commit or attempt suicide; (2) the practice of using an understaffed, overpopulated, and antiquated jail; and (3) the practice of denying necessary medical or health services to inmates. But Plaintiffs do not have standing for such an injunction. A generalized interest in deterrence does not provide standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108-09 (1998). Plaintiffs must show, among other things, that Parmer County will likely harm them in the future and that the requested relief will prevent the harm. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003); *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (holding that a plaintiff lacked standing for an injunction because future harm was "entirely speculative"). They have not made this showing.

Parmer County cannot harm Griggs in the future, and any claim that it will harm Plaintiffs is speculative.

### G. ARTICLE 1, SECTIONS 3 AND 13 OF THE TEXAS CONSTITUTION

Plaintiffs claim that Parmer County's "conduct" violated Article 1, sections 3 and 13 of the Texas Constitution. The Court rejects this claim. One may not recover damages for a claim brought under the Texas Constitution. *Huckabay v. Moore*, 142 F.3d 233, 242 (5th Cir. 1998). One may obtain equitable relief. *Id.* As discussed, however, Plaintiffs do not have standing for an injunction.

### III. CONCLUSION

Accordingly, the Court grants Parmer County's motion for summary judgment.

IT IS SO ORDERED.

Signed this 15th day of June 2007.

/s/ Mary Lou Robinson

**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**